# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| In re RUPANJALI SNOWDEN,<br><br>                Debtor. | Chapter No. 11<br><br>USDC No. 10-cv-1947 RSL |
| CHECK INTO CASH OF WASHINGTON, INC., a Washington corporation,<br><br>                Appellant,<br>     v.<br>RUPANJALI SNOWDEN, a Washington resident,<br><br>                Appellee. | Bankruptcy Case No. 09-10318<br><br>Bankruptcy Internal Appeal No 10-S045<br><br>ORDER AFFIRMING IN PART/<br>REVERSING IN PART DECISION<br>OF BANKRUPTCY COURT |
| RUPANJALI SNOWDEN,<br><br>                Cross-Appellant,<br>     v.<br>CHECK INTO CASH OF WASHINGTON,<br><br>                Cross-Appellee. | |

      This matter comes before the Court on cross appeals by Appellant/Cross-Appellee Check Into Cash of Washington, Inc., ("CIC") and Appellee/Cross-Appellant Rupanjali Snowden. The subject of the dispute is relatively straightforward: entitlement to damages and fees as a result of CIC's violation of the automatic stay that resulted from Ms. Snowden's filing for bankruptcy

relief. CIC argues that the bankruptcy court erred in awarding Ms. Snowden damages for her alleged emotional distress and erred in awarding punitive damages. Ms. Snowden argues that the court erred in declining to award her attorney's fees incurred after May 20, 2009—the date on which CIC tendered to Ms. Snowden an amount that would have resolved the stay violation.

Having reviewed the parties' papers, the Court concludes that the bankruptcy court erred in awarding emotional distress damages absent a clear showing that Ms. Snowden suffered significant harm—a conclusion that affects the punitive damage award as well. Accordingly, the Court REVERSES and REMANDS both of the damage awards for further consideration by the bankruptcy court. The Court AFFIRMS in all other respects.

## I. DISCUSSION

The issues raised on appeal are quite narrow: legal entitlement to damages for emotional distress, punitive damages, and attorney fees under a largely undisputed set of facts. The Court addresses each in turn.[1]

### A. Damages for Emotional Distress

The Court concludes first that the bankruptcy court erred in awarding Ms. Snowden $12,000 in damages for her alleged emotional distress.

The controlling standard for awarding emotional distress damages is well settled: "to be entitled to damages for emotional distress under [11 U.S.C.] § 362(h), an individual must (1) suffer significant harm, (2) <u>clearly establish the significant harm</u>, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." In re Dawson, 390 F.3d 1139, 1149 (9th Cir. 2004) (emphasis added); cf. Pub. L. No. 109-8, § 305(1)(B) (2005) (redesignating subsection (h) as subsection (k)).

---

[1] The Court presumes that the parties are familiar with the facts underlying this dispute and does not repeat them here except as necessary.

Nevertheless, in its oral ruling, the court stated that the "standard of proof is a preponderance of evidence." Admin. Record ("AR") (Dkt. # 25) at 465. And, though it later noted that "the Dawson standard is met," that conclusion immediately followed its clear application of the preponderance standard to resolve whether to credit Ms. Snowden's representations concerning her alleged distress: "I can't say that it's more likely than not that she is the one who's either misremembering or misrepresenting what happened on that occasion." Id. at 470. As a result, the Court must conclude that the bankruptcy court erred in applying a preponderance standard in lieu of a heightened clear evidence test. This conclusion is dispositive. In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1065 (9th Cir. 2001) ("The use of an incorrect legal standard is per se an abuse of discretion.").

Nonetheless, the Court thinks it prudent to briefly discuss its concern with the amount of damages awarded. As Dawson instructs, "Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm." 390 F.3d at 1149 (citing In re Skeen, 248 B.R. 312, 319 (Bankr. E.D. Tenn. 2000) (holding that "'[b]ecause the emotional distress suffered . . . was fleeting, inconsequential, and medically insignificant, . . . it is not compensable'" (emphasis added))). As a result, Ms. Snowden's own testimony that she did not consider the phone calls she received at work "such a big thing" and that they never distracted or caused her any difficulties in performing her work, AR (Dkt. # 25) at 190, would appear to rebut her claim that they caused her "significant emotional harm." Cf. Dawson, 390 F.3d at 1149 ("Although pecuniary loss is not required in order to claim emotional distress damages, not every willful violation merits compensation for emotional distress.").

Moreover, while emotional distress damages are admittedly hard to quantify, even the most generous of the "reasonably obvious" damages cases identified in Dawson awarded damages far less than those awarded in this case. In In re Wagner, for example, the court awarded emotional distress damages of only $100 even though the creditor entered the debtor's

home at night, doused the lights, and "held up a finger to the debtor's head (as if he were holding a gun) and screamed, 'I'm not playing, I'm not playing, next time I'm going to blow your brains out, bring a gun and I'll blow your brains out.'" 74 B.R. 898, 901–02, 905 (Bankr. E.D. Pa. 1987). And in In re Flynn, only $5,000 in damages were awarded, even though the creditor's actions forced the debtor to cancel her son's birthday party because her checking account had been frozen. 185 B.R. 89, 91, 93 (Bankr. S.D. Ga. 1995).

**B. Punitive Damages**

The Court next considers CIC's contention that the bankruptcy court erred in awarding punitive damages. This is a two-part inquiry. First, the Court must determine whether the bankruptcy court abused its discretion in awarding punitive damages. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). If not, the Court must then consider de novo whether the amount of the award "falls within the bounds of substantive due process." White v. Ford Motor Co., 312 F.3d 998, 1026 (9th Cir. 2002).

In this case, CIC raises two complaints: first, that the bankruptcy court effectively applied a "willful violation" standard instead of the heightened "reckless disregard" standard required for punitive damages. CIC Mot. (Dkt. # 18) at 14–18. And, second, that the court clearly erred in concluding that CIC "points to no policy directing its local offices to forward bankruptcy notices to headquarters or corporate collections or instructing how to check for bankruptcy, no policy requiring the noting of any receipt of a bankruptcy notice. . . . nor is there in evidence any policy setting forth how one is to verify a bankruptcy filing . . . ." Id. at 18–20.

Were it not for the Court's emotional distress conclusion, the Court would affirm.[2] The bankruptcy court stated the proper standard for an award of punitive damages: reckless or callous disregard for the law or rights of others or malicious, wanton, or oppressive conduct. And though this Court would not have held that CIC's actions met the standard for punitive

---

[2] The Court does compliment CIC's counsel, however, on the excellence of their briefs.

damages—whether, as stated by the Supreme Court, the "defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable," Exxon Shipping Co. v. Baker, 554 U.S. 471, 493 (2008) (internal citations omitted)—the Court cannot conclude that the bankruptcy court's "findings were illogical, implausible or without support in the record." TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011). Failure to adopt appropriate and reasonable procedures to prevent or correct stay violations can provide a basis for punitive damages. In re Stucka, 77 B.R. 777, 784 (Bankr. C.D. Cal. 1987). And, contrary to CIC's second point, CIC's own associate general counsel testified that CIC's policies do not provide any mechanism for alerting CIC's corporate collections department of a store's receipt of a bankruptcy notice when that individual's account has already been forwarded to corporate—the exact scenario present in this case. AR (Dkt. # 25) at 291–92.[3]

Finally, the one-to-one damage ratio[4] would appear to satisfy constitutional concerns. See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) (noting that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety"); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574–75 (1996) ("Three guideposts, each of which indicates that BMW did not receive adequate notice of the magnitude of the sanction that Alabama might impose for adhering to the nondisclosure policy adopted in 1983, lead us to the conclusion that the $2 million award against BMW is grossly excessive: the degree of reprehensibility of the nondisclosure; the disparity between the harm or potential harm suffered by Dr. Gore and his punitive damages award; and the difference between

---

[3] She also testified that there is no "formal" policy for forwarding store-level debtor complaints of stay violations. AR (Dkt. # 25) at 318–19. And though CIC presented some evidence of its policies for verifying bankruptcy filings, the court clearly discounted that evidence. Id. at 472.

[4] The Court considers only the emotional distress damages given the bankruptcy court's finding that CIC's cashing of the check was not a basis for punitive damages. AR (Dkt. # 25) at 473.

ORDER AFFIRMING IN PART/REVERSING IN
PART DECISION OF BANKRUPTCY COURT – 5

this remedy and the civil penalties authorized or imposed in comparable cases."). But see Gore, 517 U.S. at 575–76 ("[N]onviolent crimes are less serious than crimes marked by violence or the threat of violence." Similarly, 'trickery and deceit' are more reprehensible than negligence." (citations omitted)); Wagner, 74 B.R. at 900 (awarding only $500 in punitive damages even though creditor threatened to kill the debtor).

The problem of course is that the Court's reversal of the award of emotional distress damages changes the damage-award calculus. And were the bankruptcy court to conclude that Ms. Snowden cannot <u>clearly demonstrate</u> that she suffered significant harm, or even that the measure of her damages under that standard were less than the amount originally awarded, due process might require the court to alter its punitive damage award as well. See State Farm, 538 U.S. at 418–29; Gore, 517 U.S. at 574–75 (1996). As a result, the Court must REVERSE the court's award of punitive damages and REMAND to allow the bankruptcy court to rule on the issues of emotional distress and punitive damages together.

## C. Attorney's Fees

The final issue before the Court is Ms. Snowden's contention that the court erred in limiting her award of attorney's fees to those incurred prior to CIC's May 20, 2009—the date CIC offered to repay Ms. Snowden the full amount of the check cashed in violation of the stay, the bank fees incurred as a result, and three hours of attorney's fees. The Court affirms.

### 1. 11 U.S.C. § 362(k)

In regard to the bankruptcy court's § 362(k) finding, Sternberg v. Johnston leaves little to discuss. 595 F.3d 937, 945–48 (9th Cir. 2010). A debtor's ability to recover attorney's fees under § 362(k) is limited solely to those fees "associated with remedying the stay violation." Id. at 945. It does not permit the recovery of fees incurred in pursuing a "subsequent adversary proceeding . . . to collect damages for the stay violation." Id.

In this case, the court found that CIC tendered Ms. Snowden a full refund of the amount

of the cashed check, plus fees and costs, on May 20, 2009. AR (Dkt. # 25) at 464. As a result, it concluded that CIC had effectively remedied its stay violation as of that date. Id. Both of these findings are more than supported by the record. Id. at 86.

Nevertheless, Ms. Snowden argues that CIC's tender did not "remedy[] the stay violation" because CIC did not concede that it had violated the stay. The Court disagrees. Had Ms. Snowden accepted CIC's tender, Ms. Snowden's losses would have been righted and the violation would have come to an end. And, as Sternberg makes clear, "[o]nce the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)." 595 F.3d at 947. Accordingly, the fees incurred by Ms. Snowden post-tender, including those expended to prove a violation, were not relevant to "remedying the stay violation" but to "to collect damages for the stay violation." Cf. id. at 945–48. They are therefore not recoverable under § 362(k)(1).

**2. Inherent Authority to Sanction**

Likewise, the court did not abuse its discretion in declining to award additional attorney fees pursuant to either its civil contempt or inherent authority to sanction.

Notably, Ms. Snowden is correct in one respect. Sternberg explicitly noted that it did "not consider the civil contempt authority of the court" and did "not limit the availability of contempt sanctions, including attorney fees, for violation of the automatic stay, where otherwise appropriate." 595 F.3d at 946 n.3. Unfortunately, however, even assuming the bankruptcy court misunderstood Sternberg's import, it could not award Ms. Snowden additional fees pursuant to either its civil contempt or inherent sanction authority.

As to the first, Ms. Snowden fails to acknowledge that a bankruptcy court cannot use its civil contempt power to award fees in excess of those obtainable under § 362(k). In re Roman, 283 B.R. 1, 14–15 (B.A.P. 9th Cir. 2002) ("A court's inherent power must not be used to create substantive rights that are not available under applicable law.") (citing Walls v. Wells Fargo

Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002) (stating that a bankruptcy court cannot read other remedies into those already fixed by Congress)). In <u>In re Roman</u>, for example, the court rejected the very argument raised here, stating, "Here, Debtor was appropriately awarded actual damages for the stay violation under § 362(h), and therefore the statutory remedy was Debtor's exclusive remedy." <u>Id.</u>; <u>cf.</u> Pub. L. No. 109-8, § 305(1)(B) (2005) (redesignating subsection (h) as subsection (k)).

Neither could the court award her the additional fees she seeks through its inherent authority to sanction. First, sanction authority extends only "to deter and provide compensation for a broad range of <u>improper litigation tactics</u>," not actions like the one at issue. <u>In re Dyer</u>, 322 F.3d 1178, 1196 (9th Cir. 2003) (emphasis added). Second, "[b]efore imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct." <u>Id.</u> And in this case, the court explicitly held, "While CIC's procedures and controls were inadequate and its stays violations were significant, I do not find bad faith or willful misconduct on its part." AR (Dkt. # 25) at 473.

In sum, the court could not have abused its discretion in declining to award Ms. Snowden additional fees under any of the theories she urges.

### III. CONCLUSION

For all of the foregoing reasons, the decision of the bankruptcy court is REVERSED IN PART. The issues of emotional distress damages and punitive damages are REMANDED back to the bankruptcy court for further consideration. In all other respects, this Court AFFIRMS.

DATED this 21st day of February, 2012.

*MWS Lasnik*
Robert S. Lasnik
United States District Judge